# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**FREDERICK K. FERGUSON,**

      **Petitioner,**

v.                                                         **Case No. 1:12cv114**
                                                          **(Judge Keeley)**

**WEST VIRGINIA BOARD OF PAROLE,**

      **Respondent.**

## REPORT AND RECOMMENDATION

This case was initiated on July 16, 2012, when petitioner, through counsel, filed a petition under 28 U.S.C. § 2254 for writ of habeas corpus by a person in state custody, and paid his filing fee. By Order entered July 26, 2012, the respondent was directed to answer the petition. (Dkt.# 3). On August 23, 2012, the respondent filed a motion for an extension, which was granted by Order entered September 5, 2012. On September 19, 2012, the respondent filed a second motion requesting another extension, which was granted by Order entered September 25, 2012. Petitioner objected to the granting of the second extension on October 2, 2012. By Order entered October 3, 2012, petitioner's objections were noted and the pronounced order of the Court was confirmed. Respondent filed a reply to petitioner's objection the same day. On October 23, 2012, the respondent filed an answer to the petition, along with a motion for summary judgment with a memorandum in support. (Dkt.# 13, 14 and 15). On December 3, 2012, petitioner was directed to reply. Petitioner filed a brief in response to the motion for summary judgment on January 2, 2013, along with a motion for an extension of time. (Dkt.# 19 and 20). The following day, petitioner filed a motion seeking to withdraw his earlier motion for an extension of time. By Order entered January 8, 2013, petitioner's motion for an extension of time was denied as moot and petitioner's motion to withdraw the earlier motion was granted. (Dkt.# 22).

Accordingly, this case is before the undersigned for a report and recommendation pursuant to LR PL P 2.

## I. Factual and Procedural Background

### A. Petitioner's Conviction and Sentence

Petitioner was indicted on charges of first degree murder by the September 2006 term of the Grand Jury of Ohio County, West Virginia, arising out of a shooting incident that occurred at approximately 3:00 p.m. at 63 23rd Street in Wheeling, West Virginia on May 17, 2006. After a 5-day trial, petitioner was convicted of voluntary manslaughter on August 4, 2008. On September 29, 2008, he was sentenced to a determinate term of fifteen years. After a second extension was granted, he was re-sentenced under Rhodes v. Leverett, 160 W.Va. 781, 239 S.E.2d 136 (W.Va. 1977) on March 30, 2009. After another extension of time was granted, he was again resentenced on September 15, 2009. (Dkt.# 1-7 at 6).

Despite having received a 15-year sentence in 2008, petitioner has already been released from incarceration and is currently on parole. The West Virginia Division of Corrections' website's "inmate locator" indicates that petitioner's projected release from parole date is December 1, 2015.[1]

### B. Direct Appeal

On January 15, 2010, petition filed a petition for appeal to the West Virginia Supreme Court of Appeals ("WVSCA"), raising these issues:

1. "The trial was fundamentally flawed when Appellant [petitioner] was denied the right to cross-examine Officer Brown about his false grand jury testimony.

2(a)(b) and (c). The trial was fundamentally flawed when the Appellant [petitioner] was deprived of the right to introduce evidence (a) that the decedent, Maurice Sears, had MDMA in his rectal cavity when shot, (b) that MDMA would contribute to paranoia and aggression in users, even where MDMA is undetectable in the blood, and (c) that drug dealers are likely to carry firearms.

3. The trial was fundamentally flawed by the exclusion of evidence that Mr. Sears had previously beaten several girlfriends.

---
[1] http://www.wvdoc.com/wvdoc/OffenderSearch/tabid/117/Default.aspx

2

4. The trial was fundamentally flawed when the State caused references to the Appellant's [petitioner's] exercise of his right to counsel and his right to remain silent [to be injected] into the fabric of the trial.

5. The trial was fundamentally flawed when the trial judge <u>sua sponte</u> reversed his pre-trial ruling that evidence of flight was inadmissible. The giving of a flight instruction was erroneous.

6. The failure of the State to produce evidence, specifically a note destroyed by Officer Wroten, and notes from the autopsy, denied the Appellant [petitioner] due process.

7. The Appellant's [petitioner's] right to a speedy trial was denied.

8. The indictment should have been dismissed when it was established that the Appellant's due process rights were destroyed by the intentional misconduct of the State which had a substantial influence on the decision to indict. Redaction of the indictment by Judge Mazzone was an inappropriate, and useless remedy that exacerbated the denial of the Appellant's rights to be indicted by a grand jury.

9. In denying the defense motion to strike the Presentence Report, Appellant was deprived on his constitutional rights to be sentenced on accurate information.

10. Cumulative error warrants reversal."

(Dkt.# 1-5 at 2 - 3).

By Order entered May 4, 2010, the WVSCA granted the petition for appeal as to only the first three assignments of error. (Dkt.# 1-6). After hearing oral argument on the issues, by memorandum decision issued on February 17, 2011, the WVSCA affirmed petitioner's conviction and sentence. (Dkt.# 1-3).

On May 18, 2011, petitioner filed a petition for a writ of *certiorari* with the Supreme Court (Dkt.# 1-8), raising five issues:

1) Was petitioner denied his 6th Amendment right of confrontation, when the Court sustained the State's objection by the State to any cross-examination of a police officer on the issue of his earlier admission, during an *in camera* hearing conducted during the trial, that he had testified in reckless disregard for the truth before the Grand Jury that indicted petitioner?

2) Was petitioner's 6th Amendment right under the compulsory process clause denied when the Court prohibited him from admitting into evidence specific acts of wrongdoing by the victim, to show that the victim, and not petitioner, was the first aggressor?

3) Was petitioner's 6th Amendment right to compulsory process denied by the exclusion of evidence: a) that an autopsy revealed that the decedent in this homicide case had a quantity of controlled substance in his rectal cavity; b) that one of the controlled substances in the decedent's

3

rectal cavity would contribute to a heightened sense of paranoia and aggression; and c) that drug dealers have a propensity to carry firearms?

4) Was petitioner's 14th Amendment right to due process violated by the Court's failure to impose a sanction on the prosecution for failure to deliver material that was subject to production to defense counsel?

5) Was petitioner's 14th Amendment right to due process denied, when his objections to a finding in his pre-sentence report that he committed a premeditated act was not stricken?

On October 3, 2011, the Supreme Court denied the petition for writ of *certiorari.* (Dkt.# 1-2).

### C. <u>Petitioner's Federal Habeas Petition (Dkt.# 1)</u>

Petitioner raises one issue. He contends that his Constitutional right to confront witnesses against him was violated when, at trial, he was not permitted to cross examine a police officer on whether he had previously admitted, at an *in camera* hearing during the trial, that he had testified in reckless disregard of the truth before the Grand Jury that indicted petitioner.

Petitioner seeks unspecified relief.

### E. <u>Respondent's Motion for Summary Judgment and Memorandum in Support (Dkt.# 14 and 15)</u>

Respondent concedes that petitioner's motion was timely filed and that he has fully exhausted his claims. However, the respondent denies generally that any violation of the petitioner's rights has occurred. In support of its summary judgment motion, respondent asserts that there are no genuine issues of material fact with respect to the claims raised in the petition and that it is entitled to judgment as a matter of law. Specifically, respondent asserts that the cases petitioner relies on are distinguishable; petitioner has not rebutted the Circuit Court's finding that Officer Brown did not lie to the Grand Jury; the excluded evidence was irrelevant to petitioner's claim of a rush to judgment, because Officer Brown's Grand Jury testimony was given almost four months after petitioner had already been criminally charged; and if there was any 6th Amendment violation, it was harmless error.

**F. Petitioner's Response to Respondent's Motion for Summary Judgment (Dkt.# 20)**

Petitioner reiterates his position and attempts to refute the respondent's arguments on the same. He asserts that the WVSCA's decision on the issue was an impermissible faulty re-characterization of the facts of the case; all relevant evidence should have been admitted; relevant evidence can be used for any purpose; the excluded evidence would have exposed the "irrationality" of the State's case; the entire prosecution was oppressive; and post-trial letters from three jurors indicating that they would recant the verdict supports an inference that the decision in the trial was a close one, and might have been different had only all relevant evidence been admitted.

## II. Standard of Review

**Motion for Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." (Id) "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must

consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

### III. Analysis

**Federal Habeas Review Under 28 U.S.C. § 2254**

Notwithstanding the standards which govern the granting of a motion for summary judgment, the provisions of 28 U.S.C. § 2254 must be examined to determine whether habeas relief is proper. Title 28 U.S.C. § 2254 requires a district court to entertain a petition for habeas corpus relief from a prisoner in State custody, but "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Regardless, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). However, the federal court may not grant habeas relief unless the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d)(1) and (2); see also Williams v. Taylor, 529 U.S. 362 (2000).

The Fourth Circuit Court of Appeals has determined that "the phrase 'adjudication on the merits' in section 2254(d) excludes only claims that were not raised in state court, and not claims that were decided in state court, albeit in a summary fashion." Thomas v. Taylor, 170 F.3d 466, 475 (4th Cir. 1999). When a state court summarily rejects a claim and does not set forth its reasoning, the federal court independently reviews the record and clearly established Supreme Court law. Bell v. Jarvis, 236 F.3d 149 (4th Cir.) cert. denied, 524 U.S. 830 (2001)(quoting Bacon v. Lee, 225 F.3d 470,

478 (4th Cir. 2000)). However, the court must still "confine [its] review to whether the court's determination 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Id. at 158.

A federal habeas court may grant relief under the "contrary to" clause "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently that this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A federal court may grant a habeas writ under the "unreasonable application" clause, "if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. "An unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410.

When a petitioner challenges the factual determination made by a state court, "federal habeas relief is available only if the state court's decision to deny post-conviction relief was 'based on an unreasonable determination of the facts.'" 28 U.S.C. § 2254(d)(2). In reviewing a state court's ruling on post-conviction relief, "we are mindful that 'a determination on a factual issue made by a State court shall be presumed correct,' and the burden is on the petitioner to rebut this presumption 'by clear and convincing evidence.'" Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003).

However, habeas corpus relief is not warranted unless the constitutional trial error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); Richmond v. Polk, 375 F.3d 309 (4th Cir. 2004). "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" Brecht, *supra*.

7

Here, the petitioner's claim was properly presented to the courts of the State. Because the petitioner's claim was adjudicated on the merits in State court, the State's findings of fact and conclusions of law are due the appropriate deference.

**Denial of Sixth Amendment Right to Confront Witnesses**

Petitioner asserts that his right to confront witnesses against him was violated when the Court refused to permit him to cross examine Keith Brown ("Brown"), a police officer, on the issue of his allegedly perjured testimony given before the Grand Jury that indicted petitioner.

"The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to testing in the context of an adversary proceeding before the trier of fact." Maryland v. Craig, 497 U.S. 836, 845 (1990). Therefore, "the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose testimonial infirmities [such as forgetfulness, confusion, or evasion] through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." Id. (quoting Delaware v. Fensterer, 474 U.S. 15, 22 (1985)). A criminal defendant states a Confrontation Clause violation by showing that he was prevented "from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness," and to thereby "expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness." Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986) (*quoting* Davis v. Alaska, 475 U.S. 308, 315 (1974)).

In this case, trial testimony revealed that, unbeknownst to the decedent, Maurice Sears ("Sears"), both petitioner and Sears had been sexually involved with one Elizabeth Gorayeb.[2] On May 17, 2006, upon discovering Gorayeb's relationship with petitioner, via finding petitioner's photo on her cellphone, Sears became enraged and phoned petitioner, threatening to kill him and his family,

---

[2] Dkt.# 14-1 at 63, Trial Transcript at 241.

8

and told him to come over and fight.[3] In response, petitioner called a friend, Robert Hodge ("Hodge"), to accompany him.[4] Petitioner then drove over to Gorayeb's house with Hodge in the passenger seat, and parked in front, in the mouth of an alley that ran adjacent to the right side of the house.[5] Sears was waiting to confront them.[6] The undisputed testimony at trial was that Sears initiated the aggression by running up to the parked car, punching petitioner several times in the face, and kicking the car door.[7] A pistol was produced, and it discharged, fatally wounding Sears in the chest, piercing his heart, aorta and lung.[8] Petitioner fled the scene.[9] Three hours later, he turned himself in at the police station.[10] The gun was never found.

Petitioner contends that Brown lied to the Grand Jury considering premeditation issues, when he told a grand juror who asked who brought the gun to the scene, that the police did not know. Petitioner asserts that this testimony was false, because at the time, the police files contained an interview with Hodge, who had reported that Sears was the one who brought the gun to the scene. At trial, defense counsel sought to cross-examine Brown on the issue, and an *in camera* hearing was held. This testimony was had:

    THE COURT: **What is it that you want to get in?**

---

[3] Dkt.# 14-2 at 26, Trial Transcript at 399, 428; Dkt.# 14-3 at 23, 41, 49 - 51, Trial Transcript at 637, 709 – 10, 744, 746, 751 – 52.

[4] Dkt.# 14-2 at 33, Trial Transcript at 426 – 427; Dkt.# 14-3 at 23, Trial Transcript at 637.

[5] Dkt.# 14-2 at 4 – 5, 7, 16, 23, 25, 34, Trial Transcript at 311 – 13, 324, 358 – 59, 386 – 387, 393, 431; Dkt.# 14-3 at 641, 646, 718 – 19.

[6] Dkt.# 14-2 at 34, Trial Transcript at 429 – 30.

[7] Dkt.# 14-2 at 4 – 5, 9 – 10, 12, 16, 34, Trial Transcript at 312 - 15, 332 - 33, 335 - 36, 342, 359 - 60, 374 – 76, 403, 431; Dkt.# 14-3 at 23, 25 - 26, 43 – 44, 52, Trial Transcript at 639, 648 – 50, 719 – 21, 753 – 55; and Dkt.# 14-8, Memorandum Decision of WVSCA, at 1.

[8] Dkt.# 14-2 at 65; Dkt.# 14-3 at 2 - 4, Trial Transcript at 552 – 54, 558, 561 – 62.

[9] Dkt.# 14-1 at 76, Trial Transcript at 293; Dkt.# 14-2 at 34, 40, Trial Transcript at 432, 455; Dkt.# 14-3 at 44, 53, Trial Transcript at 721 – 22, 757.

[10] Dkt.# 14-2 at 35, Trial Transcript at 435 – 36, 440; Dkt.# 14-3 at 32, 45, Trial Transcript at 673, 726.

MR. SHEEHAN: **Judge, I want to ask him if he misled the grand jury, and if he's told lies under oath on prior occasions.**

THE COURT: And you want to use this statement here?

MR. SHEEHAN: Yes, sir.

THE COURT: **Where is the lie?**

MR. SHEEHAN: **Judge, he said there's no witness who had any information about where the gun came from. And at that point in time they – at the time he testified – they had information from Mr. Hodge which they did not tell he grand jury about and which he said did not exist by saying that.**

THE COURT: **What information they have from Mr. Hodge?**

MR. VOGRIN: **It was a recorded statement taken a week or so after the murder by Detective Dvoracek.**

THE COURT: **That he knew about?**

MR. SHEEHAN: **I – we were going to lay the foundation as part of the inquiry, Judge.**

THE COURT: Send the jury out then.
. . .
MR. SHEEHAN: **Mr. Brown, what was your role in this particular investigation**?

A: Basically all I did was do what I've already testified to. I wasn't the lead investigator. **To the best of my knowledge, the interviews that was [sic] conducted back at police headquarters, I was not involved in. That's – as I said, I wasn't lead investigator on this**.

Q: So did you discuss the investigation with other officers in the department?

A: Periodically, yes.

Q: **In order to understand what might be needed to be done, you were kept up-to-date on the information in the file; is that correct?**

A. **Yes. If there was something that I was asked to do by the - - what we call the R and I officer, who is basically in charge of the detective division at that time, if he had anything he wanted me to do, I updated myself on it; other than that, no.**

Q. Were you ultimately asked to testify before the grand jury to obtain an indictment in this case?

A. Yes, I was.

Q. **And what information were you able to review before you did that?**

A. **I glanced through the case file**.

Q. **So you had access to the entire file; is that correct?**

A. **Yes.**

Q. **You were aware that there were interviews in that file?**

A. **Yes, there was. [sic]**

Q. As you testified at the grand jury – you testified briefly and then, I believe, the grand jury was asked to consider an indictment; is that correct?

A. Yes.

Q. And after that process, you came back and you testified additionally; isn't that correct?

A. yes.

Q. Do you know if anyone else testified before the grand jury?

A. I believe I was the only one.

Q. Was it your intention, Officer, to - - had you seen the indictment that was being proposed to the grand jury?

A. I don't recall whether I looked at it before I went in or not, sir.

Q. Are you familiar with the expression "premeditated" in the law?

A. Yes.

Q. And were you aware that you – well, were you intending to offer evidence on topics related to premeditation with respect to this case?

A. When I was called back in the second time, I was asked questions from basically – from the jurors.

Q. That dealt with premeditation; is that correct?

A. Yes.

Q. **Now, at some point you testified - - I'm going to summarize it generally – that it was your view of the evidence that Mr. Sears [sic] had brought a gun from home and brought it to the site; is that correct?**

A. **Yes.**

Q. **Do you know what that was based on?**

A. **Actually I don't remember. I wasn't in the interview.**

THE COURT: Wait, wait one second. Maybe – you said Mr. Sears?

MR. SHEEHAN: Judge, I'm brain dead. I'll do that again.

. . .

Q. **You testified that Mr. Ferguson brought a gun from home to the scene of the incident; is that correct?**

A. **Yes.**

Q. **Do you recall what material in the file you relied upon to give that information?**

A. **No, sir, I don't. I don't remember.**

Q. **Then, a grand juror asked you the following question. I'll read it to you: You said he went and obtained the gun – and let me stop there. I'll come back, and I'll read it again. The "he" there would have referred to Mr. Ferguson; is that correct?**

A. **Yes.**

Q. **Grand juror's asking: You said he went and obtained the gun; was there a witness that he went and obtained the gun? Do you recall that question?**

A. **Yes.**

Q. **And your answer was: No, we don't know where he got the gun. We have no witness to that. Do you recall giving that answer?**

A. **Yes.**

Q. **Now, at the time, the police files indicated that Mr. Hodge had been interviewed and had indicated that Mr. Sears produced a gun at the side of the vehicle himself; is that correct?**

A. **I did not review that interview. I can't answer that.**

Q. **So are you telling us that you answered a grand jurors' [sic] question under oath, knowing how important it was, with reckless disregard to whether your answer was truth or not?**

12

MR. VOGRIN: **Objection, Your Honor**.

THE COURT: **Objection be overruled.**

A. **I guess, yes.**

MR. SHEEHAN: That's what I have, Judge.

THE COURT: **Any redirect or . . .**

MR. VOGRIN: **Did you answer the questions to the best of your ability?**

A. **Yes, I did.**

Q. **Did you intentionally attempt to mislead anybody?**

A. **No, I did not.**

MR. VOGRIN: That's all.

THE COURT: **At the time that you answered the question: No, we don't know where he got the gun. We have no witness to that - -**

THE WITNESS: **Sir, I did not know anything about the gun at that time.**

THE COURT: **-- was that a truthful answer insofar as you are concerned?**

THE WITNESS: **Yes, sir it is.**

THE COURT: All right.

MR. SHEEHAN: **I want to ask those questions in front of the jury.**

THE COURT: **Motion will be denied, and your position is on the record**.

(Dkt.# 14-4 at 28 – 29, Trial Transcript at 901 - 08)(emphasis added).

A review of the record reveals that on the evening of May 17, 2006, petitioner was arrested and charged with violating W.Va. Code §61-2-1 by "feloniously, willfully, maliciously, deliberately and unlawfully" murdering Sears, based on testimony of several witnesses, one of whom reported seeing Sears approach the vehicle in which petitioner was seated; punch petitioner; hearing a gunshot and seeing a flash from inside petitioner's vehicle, after which Sears stumbled backwards and fell, while the driver of the car drove away. Another witness observed two black males exit the vehicle a

short distance away, and leave in another. A spent cartridge case was found on the ground next to the driver's side door of the abandoned vehicle.[11] Almost four months later, on September 11, 2006, the grand jury charged petitioner violating W.Va. Code §61-2-1, for "intentionally, feloniously, willfully, maliciously, deliberately, unlawfully *and premeditatedly*" murdering the decedent.[12]

Information was obtained by the police on the day of the shooting, to the effect that after petitioner turned himself in to the police, he admitted to a third party that when he abandoned the vehicle he was driving, he had thrown the gun over an embankment in the same area.[13] The vehicle was found parked in an isolated area on a dead end street,[14] backed up against a hillside, concealing the rear license plate.[15] On the ground next to the driver's side door was a spent Ruger 9 mm shell casing.[16] Testimony at trial revealed that it would have fit a nine millimeter semiautomatic pistol.[17] The bullet that was later recovered from Sears' jacket at the hospital[18] was analyzed and found to be consistent with a 9 mm Ruger, corresponding to the spent shell found near the abandoned car.[19]

At trial, the only witnesses who testified that Sears, rather than the petitioner, was the one who brought the gun to the scene was petitioner himself [20] and Hodge, his companion that day.[21] However, Hodge was impeached over multiple inconsistencies in his testimony, as compared to the

---

[11] Dkt.# 14-10 at 3 - 4.

[12] Dkt.# 14-9 at 3.

[13] Dkt.# 14-4 at 31 - 32, and 36 - 38, Trial Transcript at 914 – 17, and 929 – 941.

[14] Dkt.# 14-1 at 29, 39, Trial Transcript at 108, 147, 149 – 50.

[15] Dkt.# 14-1 at 8, 11, 34 - 35, Trial Transcript at 24, 35, 127 – 28, 130.

[16] Dkt.# 14-1 at 35 - 36, 40, 44, Trial Transcript at 131 – 34, 150 – 52, 166 - 67; Dkt.# 14-10, Criminal Complaint at 4.

[17] Dkt.# 14-1 at 44, Trial Transcript at 167.

[18] Dkt.# 14-1 at 52 – 53, Trial Transcript at 199, 201 - 03.

[19] Dkt.# 14-1 at 60, Trial Transcript at 230 – 31.

[20] Dkt.# 14-3 at 52 - 53, Trial Transcript at 755, 757.

[21] Dkt.# 14-3 at 26 and 30, Trial Transcript at 649, 651 – 52, 666 – 68.

statement he gave to the police shortly after the shooting, including his denial at trial, that after the shooting, petitioner threw his shirt away in the woods near where he abandoned the vehicle.[22] When confronted, Hodge admitted lying about the shirt and multiple other points, both in his original statement to the police, and under oath on the witness stand.[23] By contrast, numerous witnesses testified that just prior to the shooting, while Sears was repeatedly punching petitioner in the face,[24] they never saw Sears with a gun.[25] One witness, a friend of Sears, testified that he had cautioned Sears, before the altercation began, about approaching petitioner's vehicle, "[b]ecause he didn't have no protection. You don't run up on a car with a dude in it."[26] Numerous witnesses testified that during the altercation, Sears' hands were empty;[27] that they never saw Sears reach into his pocket or waistband before the gun fired;[28] that the gun was fired at Sears from inside the vehicle while Sears was standing alongside it;[29] that the driver of the car [petitioner] appeared to have something in his hand as he pulled it back into the car immediately after the shooting;[30] and that no gun was found on the ground near Sears after petitioner fled the scene.[31] One witness, who was on the porch of the Gorayeb house, adjacent to where the vehicle was parked, testified that she shouted at Sears as he was punching petitioner, said "he [Sears] turned around, looked at me in the eyes, and then he was

---

[22] Dkt.# 14-3 at 31, Trial Transcript at 670 – 71.

[23] Dkt.# 14-3 at 31, 32, 36 - 37, Trial Transcript at 671, 672, 675, 688, 689, 690, 691, 692, 693.

[24] Dkt.# 14-2 at 5, Trial Transcript at 313, 315 - 16.

[25] Dkt.# 14-1 at 76, Trial Transcript at 294; Dkt.#14-2 at 12, 28, Trial Transcript at 342, 378, 407.

[26] Dkt.# 14-2 at 22, Trial Transcript at 382 - 83.

[27] Dkt.# 14-2 at 5, 8, 12, 19, 27, Trial Transcript at 314, 325, 342, 369, 404.

[28] Dkt.# 14-2 at 10, 22, 28, Trial Transcript at 334, 383, 407.

[29] Dkt.# 14-2 at 5, 27, 28, Trial Transcript at 315, 404, 408 – 09.

[30] Dkt.# 14-2 at 12, Trial Transcript at 343-44.

[31] Dkt.# 14-1 at 23, 25, 50, 68, 76, Trial Transcript at 23, 91, 192, 261, 293; Dkt.# 14-2 at 24, Trial Transcript at 390.

shot."[32] Another witness, viewing from a window in the Gorayeb house, testified that Sears was shot as he was stepping back away from the vehicle with his empty hands clenched in fists,[33] testimony corroborated by other witnesses, one of whom was walking from the school bus to his home nearby.[34] Moreover, there was testimony that after the shot was fired, petitioner immediately fled the scene at a high rate of speed;[35] abandoned his car; threw away the gun; removed his shirt and threw it away; and disappeared for three hours, before turning himself in to the police.[36] At trial, defense counsel's theory of the case was that Sears had brought the gun and that during the struggle when he produced it, it went off and killed him. Petitioner repeatedly claimed not to recall the details of the day. He insisted that he owned only one gun, a registered gun, a .380, a different make from the one that shot Sears,[37] and that he had never owned any other gun, registered or unregistered.[38] However, in a telephone call, recorded from jail after petitioner was arrested, he was overheard instructing a family member on what to do with his registered gun, in case the police came with a search warrant, stating "*that one at your house is okay* because it's registered there,"[39] indicating that despite his later testimony to the contrary, he owned more than one gun.

---

[32] Dkt.# 14-2 at 5, Trial Transcript at 315.

[33] Dkt.# 14-2 at 27, Trial Transcript at 404.

[34] Dkt.# 14-2 at 14, 27 – 28, Trial Transcript at 35, 404 - 05.

[35] Dkt.# 14-1 at 27, Trial Transcript at 98 – 102.

[36] Dkt.# 14-1 at 41, Trial Transcript at 154.

[37] Dkt.# 14-3 at 26 - 27, 30, 35, 55 - 56, Trial Transcript at 649 – 56, 765, 666 – 68, 688, 771.

[38] Dkt.# 14-3 at 49, Trial Transcript at 741 – 42.

[39] Dkt.# 14-3 at 49, Trial Transcript at 741 – 42.

Gunshot residue ("GSR") testing was performed to determine who had fired the shot.[40] GSR was found on the driver's side interior door panel of petitioner's car.[41] None was found on petitioner's face or hands.[42]

Sears was still alive, although *in extremis*,[43] when taken from the scene; he died later at the hospital after unsuccessful resuscitation efforts.[44] GSR testing revealed particles on Sears' face,[45] but none on his hands.[46] His hands had not been bagged to preserve possible GSR evidence.[47] However, there were numerous GSR particles found on the top and middle of Sears' shirt, and very few particles on the bottom;[48] supporting the testimony that he was standing close to the vehicle when shot. A very small amount of GSR was found on both cuffs and lower sleeves of Sears' jacket.[49] However, at trial, a witness to the shooting testified he saw Sears clutch his chest and double over when shot.[50]

Petitioner's claim is that the state prosecutor knowingly used misleading and perjured testimony to influence the grand jury to charge petitioner with premeditated murder. Respondent contends petitioner's argument is without merit because the excluded evidence was irrelevant; the Circuit Court found that Brown did not lie to the grand jury; petitioner has failed to show Brown

---

[40] Dkt.# 14-1 at 44 - 45, 51, Trial Transcript at 167, 170, 193 – 95.

[41] Dkt.# 14-1 at 42, Trial Transcript at 158 – 59.

[42] Dkt.# 14-2 at 52, Trial Transcript 496 – 98.
[43] Dkt.# 14-2 at 22, 24, Trial Transcript at 382, 391.

[44] Dkt.# 14-1 at 23, Trial Transcript at 82; Dkt.# 14-4 at 23; Trial Transcript 884.

[45] Dkt.# 14-2 at 45, Trial Transcript at 474.

[46] Dkt.# 14-2 at 45 - 46, Trial Transcript at 474, 477.

[47] Dkt.# 14-4 at 27, Trial Transcript 897 – 99.

[48] Dkt.# 14-4 at 10, Trial Transcript at 829 - 30.

[49] Dkt.# 14-4 at 10, 13, Trial Transcript at 830 – 31, 841.

[50] Dkt.# 14-2 at 17, Trial Transcript at 361, 368.

committed perjury, and even if excluding the allegedly perjured evidence was error, it was not error sufficient to warrant relief.

The Court agrees with Respondent and finds petitioner's claims are without merit. First, perjury is committed by a witness who, testifying under oath or affirmation, "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Dunnigan, 507 U.S. 87, 94 (1993). Here, there is no evidence Brown willfully intended to provide false testimony or misrepresent who brought the gun to the scene of the shooting. To the contrary, the record establishes that Brown was unaware, at the time of his Grand Jury testimony, that any witness had already told the police otherwise.[51] Moreover, at the time Brown appeared before the Grand Jury, there was also evidence in the file to the effect that at the police station, petitioner had admitted to a third party that he had fled with the gun and then thrown it over an embankment near where he abandoned the vehicle. This evidence, obviously far less favorable to petitioner, was apparently not conveyed by Brown to the Grand Jury, either, undercutting petitioner's implied claim of bias, and lending credence to Brown's *in camera* testimony that he had not been involved in the interviews; had only an ancillary role in the investigation; merely glanced through the file before testifying and was unaware of everything in it when he testified. Under the circumstances, the State court made a reasonable decision to exclude the contested evidence. "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, *supra* at 679.

Even if petitioner were able to establish that Officer Brown committed perjury, relief would not be warranted, because petitioner has failed to demonstrate the false testimony "in any reasonable

---

[51] Dkt.# 14-4 at 29, Trial Transcript at 908.

likelihood . . . [] affected the judgment of the jury." Giglio v. United States, 405 U.S. 150, 154 (1972). The overwhelming evidence at trial was that it was petitioner, rather than Sears, who brought the gun to the scene of the shooting. Moreover, any alleged perjured testimony by Brown regarding the police's being unaware of who brought the gun was likely immaterial to the outcome of petitioner's case, because at trial, the evidence was admitted anyway, through both petitioner and Hodge, who each testified that it was Sears who brought the gun.[52] Despite its admission, the petit jury apparently found the weight of the evidence was that petitioner had not committed premeditated murder, but rather, voluntary manslaughter. The jury's verdict suggests that any alleged perjured testimony by Brown "render[ed] harmless any conceivable error in the charging decision that might have flowed from the violation." United States v. Mechanik, 475 U.S. 66, 73 (1986).

Accordingly, because there was no unreasonable determination of the facts, in light of the overwhelming evidence presented in the State court proceeding, the undersigned cannot recommend habeas relief.[53] Further, the undersigned agrees with the Circuit Court and the WVSAC that there was no perjury. Without perjury, there can be no constitutional error. Even if petitioner could show that a constitutional error had occurred, because he cannot show it had a "substantial and injurious effect or influence in determining the jury's verdict,"[54] he cannot show actual prejudice, and thus habeas corpus relief is not warranted.

## IV. Recommendation

For the reasons stated above, it is recommended that the respondent's Motion for Summary Judgment (Dkt.# 14) be **GRANTED,** and petitioner's §2254 petition **be DENIED and DISMISSED with prejudice.**

---

[52] Dkt.# 14-3 at 43, 52 - 53, Trial Transcript at 720, 755 – 57.

[53] Williams v. Taylor, 529 U.S. 362 (2000).

[54] Brecht v. Abrahamson, *supra* at 637.

**Within fourteen (14) days** after being served with a copy of this report and recommendation, or by **February 20, 2013**, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation**. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record electronically, as applicable.

DATED: February 6, 2013

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE