IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**FREDERICK K. FERGUSON,**

      **Petitioner,**

v. //     CIVIL ACTION NO. 1:12CV114
                    (Judge Keeley)

**WEST VIRGINIA BOARD OF PAROLE,**

      **Respondent.**

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 24], GRANTING RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 14], DISMISSING
<u>§ 2254 PETITION AND DENYING CERTIFICATE OF APPEALABILITY</u>**

Pending before the Court is Frederick K. Ferguson's ("Ferguson") Petition for a Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254. (Dkt. No. 1). The respondent's Motion for Summary Judgment (dkt. no. 14) is fully briefed, and the Court has reviewed the Magistrate Judge's Opinion and Report and Recommendation ("R&R") on the matter. (Dkt. No. 24). For the reasons that follow, the Court **ADOPTS** the R&R (dkt. no. 24) in its entirety, grants the defendant's Motion for Summary Judgment (dkt. no. 14), and **DISMISSES** the petition **WITH PREJUDICE**.

**I.**

In 2008, an Ohio County, West Virginia jury convicted Ferguson of voluntary manslaughter for the shooting death of Maurice Sears ("Sears"). (Dkt. No. 1-8 at 8, 10, 12). Ferguson was sentenced to

fifteen years of incarceration. (Dkt. No. 1-7 at 6).[1] On February 17, 2011, the West Virginia Supreme Court of Appeals affirmed his conviction and sentence. (Dkt. No. 1-3 at 5). On October 3, 2011, the Supreme Court of the United States denied Ferguson's writ of certiorari. (Dkt. No. 1-2).

On July 16, 2012, Ferguson timely filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 with this Court, see id. § 2244(d), in which he raised an issue argued previously on direct review. See Picard v. Connor, 404 U.S. 270, 275 (1971). The Court referred this matter to United States Magistrate Judge James Seibert for initial screening and a report and recommendation in accordance with LR PL P 2. Pursuant to the Court's order (dkt. no. 3), the West Virginia Board of Parole ("the WVBOP") responded (Dkt. No. 13) and also moved for summary judgment on the petition. (Dkt. No. 14). Ferguson responded to the motion for summary judgment on January 2, 2013. (Dkt. No. 20). On February 6, 2013, Magistrate Judge James Seibert issued an R&R in which he recommended that the Court grant summary judgment to the WVBOP and dismiss the petition with prejudice. (Dkt. No. 24). After Ferguson filed timely objections to the R&R (Dkt. No. 25), the Court conducted a de novo

---

[1] While Ferguson is currently on parole, he is still "in custody" for habeas purposes. Jones v. Cunningham, 371 U.S. 236, 243 (1963).

review of the matter, 28 U.S.C. § 636(b)(1), and now concludes that Ferguson's objections are without merit.

**II.**

Elizabeth Gorayeb ("Gorayeb") maintained romantic relationships with both Ferguson and Sears. (Dkt. No. 1-3, at 1).[2] Angered by Ferguson's involvement with Gorayab, Sears threatened to kill Ferguson and his family. Id. After receiving these threats, Ferguson, accompanied by his friend, Robert Hodge ("Hodge"), met with Sears. Id. During this meeting, Sears was on foot, while Ferguson remained in his car. Id. At some point, Sears kicked Ferguson's car door. Id. Ferguson and Sears struggled, a gun appeared, and a shot was fired that struck and killed Sears. Id. Authorities never recovered the gun. Id.

The State sought to indict Ferguson for first-degree murder. Id. Officer Howard Keith Brown ("Officer Brown"), the state's sole witness before the grand jury (dkt. no. 1 at ¶7), testified that Ferguson had taken a gun to his meeting with Sears. (Dkt. No. 1-3 at 2). A grand juror asked Officer Brown, "You said he [Ferguson] went and obtained the gun. Was there a witness that he went and

---

   [2] As Ferguson has not disputed the validity of factual findings made by the West Virginia Supreme Court of Appeals as to the conduct underlying his conviction, 28 U.S.C. 2244(e)(1), the Court relies on them to present this recitation of the facts of Ferguson's offense and trial, unless otherwise noted.

obtained the gun?" Id. at n.2. Officer Brown responded that he did not "know where he [Ferguson] got the gun. We have no witness to that." Id. Hodge, however, had previously told police that it was Sears who possessed the gun when he met with Ferguson. Id.

At trial, Ferguson's attorney moved to cross-examine Officer Brown about this discrepancy. The court conducted an in camera hearing on the issue, during which defense counsel explained that the purpose of the cross-examination was to attack Officer Brown's credibility: "Judge, I want to ask him if he misled the grand jury, and if he's told lies under oath on prior occasions." (Dkt. No. 14-4 at 28). Further in camera questioning by defense counsel established that Officer Brown had not reviewed the entire case file prior to testifying before the grand jury.[3] Id. at 29. In summing up his inquiry, defense counsel stated: "So are you telling us that you answered a grand juror's [sic] question under oath, knowing how important it was, with reckless disregard to whether your answer was truth or not?" Id. Officer Brown responded, "I guess, yes." The court then inquired of Officer Brown: "At the time that you answered the question[, ']No, we don't know where he got

---

[3] Defense counsel asked, "Now, at the time, the police files indicated that Mr. Hodge had been interviewed and had indicated that Mr. Sears produced a gun at the side of the vehicle himself, is that correct?" Officer Brown responded, "I did not review that interview. I can't answer that." (Dkt. No. 14-4 at 29).

the gun. We have no witness to that[,']  was that a truthful answer insofar as you are concerned?" Id. Officer Brown confirmed that it was. The trial court then denied Ferguson's motion, foreclosing cross-examination as to Officer Brown's grand jury testimony. Id.

The jury subsequently convicted Ferguson of voluntary manslaughter. Ferguson appealed his conviction on numerous grounds, including those presented in the instant habeas petition. In dismissing Ferguson's appeal of the trial court's ruling as to Officer Brown's grand jury testimony, the West Virginia Supreme Court of Appeals explained:

> Upon review by this Court, we find that Officer Brown's statement was not untruthful, that the trial court did not abuse its discretion in disallowing cross-examination on that issue at trial, and that [Ferguson's] rights were not thereby prejudiced. Moreover, even if an abuse of discretion in this evidentiary ruling had occurred, the State correctly emphasizes that reversal is not required where substantial rights are not affected. The underlying information [Ferguson] sought to obtain concerning conflicting evidence on the issue of the gun was introduced at trial through the testimony of Mr. Hodge. The jury was ultimately presented with that evidence.

(Dkt. No. 1-3 at 2).

### III.

#### A.

Ferguson argues that the trial court's ruling violated his Sixth Amendment right to confront witnesses against him. As a state prisoner attacking the validity of his conviction or sentence,

5

Ferguson is subject to the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). "As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). Where, as in Ferguson's case, a claim has been "adjudicated on the merits in State court proceedings," a reviewing federal court shall grant habeas relief only where the state court decision

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A petition triggers AEDPA's 'contrary to' language only where the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." Williams v. Taylor, 529 U.S. 362, 405 (2000). Alternatively, a petition triggers AEDPA's 'unreasonable application' language only where the state's application of Supreme Court precedent is "objectively unreasonable." Renico v. Lett, 130 S.Ct. 1855, 1862

(2010). A federal court may not disturb the sound judgment of the state court and find "an unreasonable application of federal law unless the state court's decision lies well outside the boundaries of permissible differences of opinion." Tice v. Johnson, 647 F.3d 87, 108 (4th Cir. 2011) (internal quotation marks omitted).

Finally, federal courts are to defer to the factual findings of the state court, unless the petitioner rebuts those findings with clear and convincing evidence. Id. § 2254(e)(1). "The deference required by § 2254(d) applies even when the state court summarily denied relief instead of providing a written opinion explaining its reasoning." Jones v. Seifert, 808 F. Supp. 2d 900, 918 (S.D.W. Va. 2011) appeal dismissed, 467 F. App'x 209 (4th Cir. 2012) (citing Woodford v. Visicotti, 537 U.S. 19, 24 (2002)). In all, AEDPA's standard is "difficult to meet." Harrington v. Richter, 131 S.Ct. 770, 786 (2011).

**B.**

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c)(1)(A), (a). When ruling on a motion for summary judgment, the Court reviews all the evidence

7

"in the light most favorable" to the nonmoving party. Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. Id. at 248–52.

## IV.

### A.

With those standards in mind, the Court turns to Ferguson's argument that the trial court violated his Sixth Amendment rights by limiting the scope of his cross-examination of Officer Brown. "The Confrontation Clause of the Sixth Amendment guarantees

8

criminal defendants the opportunity for effective cross-examination." United States v. Patterson, 406 F. App'x 773, 778 (4th Cir. 2011) cert. denied, 131 S. Ct. 2893 (U.S. 2011) (citing Davis v. Alaska, 415 U.S. 308, 315 (1974)). "It does not, however, confer the right to cross-examine 'in whatever way, and to whatever extent, the defense might wish.'" Id. (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)). "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Van Arsdall, 475 U.S. at 679.

Moreover, the purpose of the foreclosed cross-examination matters. "[T]he Supreme Court has held that a defendant presents a constitutional violation 'by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.'" United States v. Hill, 322 F.3d 301, 304 (4th Cir. 2003) (quoting Van Arsdall, 475 U.S. at 680). In other words, "to prove that the exclusion of the evidence was unconstitutional, the

9

defendant must show that his evidence went directly to the issue of bias of the witness, or motive of the witness to fabricate." Id. In sum, AEDPA notwithstanding, the defendant's burden is still heavy. As the Fourth Circuit has observed, "[i]n cases involving violations of a defendant's rights under the Confrontation Clause, a reviewing court will not reverse a conviction based on improper limitation during cross-examination so long as the error is harmless beyond a reasonable doubt." United States v. Armstrong, 494 Fed. App'x. 297, 298 (4th Cir. 2012) (citing United States v. Turner, 198 F.3d 425, 430 n.6 (4th Cir. 1999)).

**B.**

The WVBOP first argues that, under AEDPA's 'contrary to' language, the cases cited by Ferguson are not on all fours with the facts of his case, and thus do not establish that the trial court's ruling was contrary to one reached by the Supreme Court. See Williams, 529 U.S. at 405. It next argues that Brown was not a key witness, and thus this case is distinguishable from cases such as Alford v. United States, 282 U.S. 687 (1932), which dealt the with the Sixth Amendment right to cross-examine an important government witness. The WVBOP also argues that Brown's testimony was not untruthful, and that a trial court's refusal to permit an attack on general credibility via cross-examination, as was proposed by Ferguson's counsel, does not violate the Sixth Amendment. Finally,

the WVBOP argues that the discrepancy between Brown's grand jury testimony and the record is irrelevant, and that, even assuming a violation of the Sixth Amendment occurred, such error was harmless.

In response, Ferguson points to five Supreme Court cases that he contends are "controlling", and thus satisfy AEDPA's restrictive standards.[4] He also asserts that Brown testified in "reckless disregard for the truth," and assails the West Virginia Supreme Court of Appeals' (and, presumably, the WVBOP's) characterization of Brown's testimony as "not untruthful." Finally, Ferguson argues that, by forbidding cross-examination of Brown concerning his grand jury testimony, the trial court committed an error much greater than harmless.

### C.

The Court turns first to whether Ferguson's petition satisfies the exacting standards of AEDPA. In other words, has Ferguson shown that the West Virginia Supreme Court of Appeals' decision was contrary to a decision of the United States Supreme Court, or an unreasonable application of such a decision?

First, the West Virginia Supreme Court of Appeals' conclusion that the trial court did not violate Ferguson's Sixth Amendment

---

[4] Those cases are: Delaware v. Van Arsdall, 475 U.S. 673 (1986); Davis v. Alaska, 415 U.S. 308 (1974); Smith v. Illinois, 390 U.S. 129 (1968); Pointer v. Texas, 380 U.S. 400 (1965); and Alford v. United States, 282 U.S. 687 (1931).

rights is not contrary to a decision by the Supreme Court. As that Court has recognized, trial judges retain wide discretion to place reasonable limits on cross-examination. See Van Arsdall, 475 U.S. at 679. The West Virginia Supreme Court of Appeals concluded that, in Ferguson's case, the trial court had acted within its discretion when it disallowed cross-examination on Brown's grand jury testimony. Thus, its conclusion is in line with, and not opposite to, that of the Supreme Court in Van Arsdall, id.

Second, Ferguson has not pointed to a Supreme Court decision that is factually on all fours with his own. Instead, he relies on cases such as Alford v. Texas that address the Sixth Amendment right to cross-examination generally. Alford, for example, dealt with precluded questions on cross-examination as to the witness's residence. 282 U.S. 687 (1931). Pointer v. Texas, on the other hand, dealt with the introduction of prior testimony of a witness whom the petitioner had been unable to cross-examine at the time. 380 U.S. 400 (1965). Smith v. Illinois dealt with cross-examination as to a key witness's name and address. 390 U.S. 129 (1968). Davis v. Alaska dealt with inquiry as to the witness's probationary status. 415 U.S. 308 (1974). Finally, Delaware v. Van Arsdall dealt with cross-examination about any deal made by the witness with the prosecution. 45 U.S. at 676. These cases are not "materially indistinguishable" from the facts in Ferguson's case. Indeed, none

deals with the refusal to allow cross-examination as to a law enforcement officer's grand jury testimony – perjured or otherwise. As such, under AEDPA, they cannot satisfy the "contrary to" prong.

Moreover, Ferguson has not shown that the decision of the West Virginia Supreme Court of Appeals was unreasonable. A trial judge may, in his discretion, impose reasonable limits on cross-examination. Here, the trial judge did so only after hearing counsel's argument and pursuing his own inquiry of Officer Brown. The trial judge also permitted cross-examination of Officer Brown on numerous other topics, including the preservation of evidence. Thus, the trial court did not foreclose cross-examination of Officer Brown on all topics. Cf. United States v. Jordan, 466 F.2d 99, 101 (4th Cir. 1972) ("the clearest violation of the . . . right of confrontation is where the defense is not allowed to examine the prosecution witnesses at all"). The decision of the West Virginia Supreme Court of Appeals therefore does not "lie[] well outside the boundaries of permissible differences of opinion." Tice v. Johnson, 647 F.3d 87, 108 (4th Cir. 2011) (internal quotations omitted).

**D.**

AEDPA's high evidentiary threshold notwithstanding, Ferguson's claim of a Sixth Amendment violation fails for two additional reasons. First, in his objections to the magistrate judge's R&R, Ferguson argues that the purpose of the proposed cross-examination

13

of Brown as to his grand jury testimony was to "expose the irrationality of the State's case and the irrationality with which it had been pursued" (dkt. no. 25 at 8), and to illustrate a far-reaching effort by the State of West Virginia to oppress him. (Id. at 9-11).

Neither of those purposes is sufficient to establish a violation of the Sixth Amendment. Ferguson must show that "his evidence went directly to the issue of bias of the witness, or motive of the witness to fabricate." Hill, 322 F.3d at 304. While Brown's failure to familiarize himself with the case file prior to testifying to the grand jury might impugn his general credibility, it does not go directly to the issue of bias. Rather, such reckless testimony suggests that, generally, Brown lacked credibility. As such, foreclosure of cross-examination on the subject does not violate the Sixth Amendment.

Second, even assuming a violation of Ferguson's Sixth Amendment rights did occur, the question is whether that violation had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); Richmond v. Polk, 375 F.3d 309 (4th Cir. 2004). "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief

based on trial error unless they can establish that it resulted in 'actual prejudice.'" Brecht, 507 U.S. at 637.

Here, Ferguson cannot meet that high evidentiary standard. Insofar as he wished to cross-examine Brown about his grand jury testimony to establish sloppy police work, surely Brown's admission that Sears' hands were not 'bagged', arguably fouling gunshot residue stains, was equally effective. (Dkt. No. 14-4 at 27). More fundamentally, Brown testified at trial that he had not reviewed the case file for two years, making plain for the jury that his testimony rested on a somewhat shaky recollection. Id. To the extent that Ferguson sought to cross-examine Brown to counter the conclusion that it was Ferguson who brought the gun to his meeting with Sears, and thus intended to kill Sears, Hodge, Ferguson's companion, testified at trial that Sears brought the gun to the meeting. (Dkt. No. 14-4 at 651-52). In other words, even "assuming the damaging potential of the cross-examination were fully realized," Van Arsdall, 475 U.S. at 684, the cross-examination of Brown was either unnecessary or repetitive. Thus, the Court concludes beyond a reasonable doubt that any error the trial court may have committed as to Ferguson's opportunity to cross-examine Brown was harmless.

**E.**

In conclusion, for the reasons stated above, the Court:

1. **ADOPTS** the R&R in its entirety (dkt. no. 24);

2. **GRANTS** the defendant's motion for summary judgment (dkt. no. 14);

3. **DISMISSES** the instant § 2254 petition **WITH PREJUDICE**; and

4. **ORDERS** that this case be stricken from the Court's docket.

Finding no issue of constitutional merit upon which reasonable jurists might differ, the Court **DENIES** a certificate of appealability in this matter. <u>See</u> Rule 11(a), Rules Governing Section 2254 and 2255 Cases.

It is so **ORDERED**.

The Court directs the Clerk to remove this case from the active docket, and to transmit copies of this Order to counsel of record.

Dated: May 10, 2013

<pre>
                                    /s/ Irene M. Keeley
                                    IRENE M. KEELEY
                                    UNITED STATES DISTRICT JUDGE
</pre>